UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

    v.                                                  CASE NO. 5:22-cr-72-GAP-PRL

DAVID ROBINSON, JR.

## UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO DISMISS

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits its response in opposition to David Robinson, Jr.'s Motion to Dismiss (Doc. 32). On October 11, 2022, a federal grand jury returned a true bill on a one count indictment charging that on or about May 9, 2022, Robinson did knowingly possess a firearm, that is: a rifle having a barrel less than 16 inches in length which was not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5861(d) and 5871. Doc. 1. On November 21, 2022, Robinson filed a motion to dismiss indictment and memorandum of law. Robinson advances the following arguments:

1. The statute and offense violate Mr. Robinson's right to keep and bear arms under the Second Amendment;

2. Federal criminal punishment of the possession of an unregistered firearm under 26 U.S.C. §§ 5861(d) and 5871 exceeds Congress's power to tax under Article 1, Section 8, of the Constitution and violates the Tenth Amendment.

    The NFA is unconstitutional, both on it's face and as applied to Mr. Robinson;

3. If the Act is a tax, it is unconstitutional because it taxes the exercise of Second Amendment rights; and

4. The offense charged is unconstitutionally vague and violates the due process clause of the Fifth Amendment to the United States Constitution.

*See* Doc. 32 at 2.

Robinson's arguments are grounded in the recent Supreme Court decision in *New York State Rifle and Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

### Memorandum of Law

Federal Rule of Criminal Procedure 12(b)(3)(B) provides that "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B). When ruling on a motion to dismiss an indictment for failure to state an offense, "a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). The court must view that language "in the light most favorable to the government." *Id.* at 1258.

"The propriety of granting a motion to dismiss an indictment under [Fed. R. Crim. P.] Rule 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of

fact." *United States v. Miller*, 491 F.2d 638, 647 (5th Cir. 1974).[1] Because the sufficiency of an indictment is determined on its face, it is reversible error for a Court to look beyond the face of the indictment in ruling on a motion to dismiss for failure to state an offense. *See generally Sharpe*, 438 F.3d 1257 (reversing dismissal of indictment where "the allegations in the indictment were sufficient to state the charged offenses as a matter of law … because the counts contained all of the elements of the offense charged and informed the defendants of the charges they faced"); *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (reversing the dismissal of an indictment and explaining "[t]here is no summary judgment procedure in criminal cases" … "[n]or do the rules provide for a pre-trial determination of sufficiency of the evidence.").

Under Fed. R. Crim. P. 7(c), "[t]he indictment [] must be a 'plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" The indictment is sufficient if "[i]t (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Walker*, 490 F.3d 1282, 1296 (11th Cir. 2007) (quoting *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002)).

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

The indictment against Robinson is sufficient in terms of satisfying the requirements that the Eleventh Circuit articulated. As to the sole charge in the indictment, it presents the essential elements of the charged offense; it notifies Robinson of the charge to be defended against; and the indictment would enable Robinson to rely upon a judgment under the indictment as a bar against double jeopardy.

**I.    Neither the NFA nor the Indictment violate Robinson's Second Amendment liberties.**

The Second Amendment recognizes "the right of the people to keep and bear Arms" and the right "shall not be infringed." U.S. Const. amend II. Yet that right "is not unlimited," *D.C. v. Heller*, 554 U.S. 570, 626 (2008), and the Second Amendment is not "a regulatory straightjacket." *Bruen*, 142 S. Ct. at 2133 (2022). While the Supreme Court has struck down some restrictions, it has stressed that the Second Amendment does not protect "dangerous and unusual weapons." *Id.* (quoting *Heller*, 554 U.S. 627). That is, "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Heller*, 554 U.S. at 625. Said differently, the Supreme Court has confirmed that a ban on unregistered short-barreled shotguns is safe against a Second Amendment challenge. *See United States v. Miller*, 307 U.S. 174, 178 (1939).

Consistent with that understanding, the Eleventh Circuit has held many times that the National Firearms Act (NFA) and its registration scheme for certain statutorily defined firearms does not violate the Second Amendment. *United States v.*

4

*Bolatete*, 977 F.3d 1022 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1754 (2021). Despite Robinson's contentions, *Miller* and *Bolatete* foreclose relief; *Bruen* did not overrule them or even mention the NFA, and it certainly does not suggest that its holding would compel a determination that the Court intended to declare the NFA unconstitutional or short-barrel rifles to be outside of the government's authority to regulate firearms.[2] "[T]he *Bruen* majority did not abrogate its prior statements in *Heller*[.]" *United States v. Coombes*, No. 22-CR-00189, 2022 WL 4367056, at *9 (N.D. Okla. Sept 21, 2022).

According to Robinson, the plain text of the Second Amendment covers Robinson's conduct of possessing a short-barreled rifle. Doc. 32 at 3. Robinson further asserts that his conduct is "presumptively protected by the Second Amendment under *Bruen*." *Id*. However, the plain text of the Second Amendment does not guarantee an unequivocal right to possess a short-barreled rifle. The Supreme Court determined more than 80 years ago that the plain text of the Second Amendment does not guarantee a right to possess short-barreled rifles, stating that "we cannot say that the Second Amendment guarantees the right to keep and bear" an unregistered sawed-off "shotgun having a barrel of less than eighteen inches in length." *Miller*, 307 U.S. 175-78; *Heller*, 554 U.S. at 625 (reading *Miller* to say that the

---

[2] The *Bruen* court held that the Second Amendment protects "an individual's right to carry a handgun for self-defense outside the home," 142 S. Ct. at 2122, and that New York's public carry licensing regime was unconstitutional to the extent that it required individuals wishing to exercise that right to demonstrate to government licensing officials a valid justification for doing so.

"Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns."). Short-barreled rifles, which are "close analogues" of short-barreled shotguns, likewise "fall [] outside the Second Amendment guarantee." *United States v. Cox*, 906 F.3d 1170, 1185 (10th Cir. 2018).

Furthermore, possession of a short-barreled rifle is not grounded in this country's historical tradition. While Robinson points to persuasive authority to argue otherwise, *Heller* held that the Court's reading in *Miller*—that the Second Amendment protects only the "sorts of weapons" that were "in common use at the time" and does not protect "the carrying of dangerous and unusual weapons" — "accords with the historical understanding of the score of the right." *Id.* Thus, Robinson's argument that there is "no historical analogue" for his prosecution under Section 5861(d) conflicts with *Miller* and *Heller*. *See* Doc. 32 at 3, 6-9.

*Bruen* expressly endorsed *Miller* and *Heller* and thus does not call for a different conclusion. *Bruen*, 142 S. Ct. at 2143; *see also Id.* at 2162 (Kavanaugh J., concurring). In fact, *Bruen*, reiterated that there is no "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 2128 (quoting *Heller*, 554 U.S. at 626). The possession of a prohibited short-barreled shotgun or rifle is as "inherently dangerous, aggressive, and threatening" as possession of prohibited explosives. *United States v. McGill*, 618 F. 3d 1273, 1279 (11th Cir. 2010) (distinguishing "use" and "possession" to determine that possessing

6

an outlawed short-barreled shotgun was not a violent felony under the ACCA); *see also United States v. Cox*, 906 F.3d 1170, 1185 (10th Cir. 2018) (noting that a long gun with a shortened barrel is both dangerous, because "it's concealability fosters its use in illicit activity" and unusual, "because of its heightened capability to cause damage." (quoting *United States v. Marzzarella*, 614 F.3d 85, 95 (3d Cir. 2010))); *United States v. Upton*, 512 F.3d 394, 404 (7th Cir. 2008) ("People do not shorten their shotguns to hunt or shoot skeet."); *United States v. Brazeau*, 237 F.3d 842, 845 (7th Cir. 2001) ("The point is that most firearms do not have to be registered—only those that Congress found to be inherently dangerous.").

Further, Section 5861(d) is not a blanket prohibition on firearms, but rather codifies the NFA's registration regime for certain types of firearms, including the short-barreled rifle at issue in this case. *See United States v. Spoerke*, 568 F.3d 1236, 1245 (11th Cir. 2009) (the NFA, and the criminal penalty for violating it, are grounded in Congress' power to tax); *see also Bolatete*, 977 F.3d at 1179 (discussing at length the National Firearms Act taxation and licensing scheme; citing *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972)). *Bruen* did not undermine this regime; rather, *Bruen* specifically approved of licensing regimes for carrying firearms, so long as those regimes are open to ordinary, law-abiding citizens. 142 S. Ct. at 2161 (Kavanaugh, J., concurring). Here, Section 5861(d) does not require "demonstrating to government officers some special need" to possess a short-barreled rifle in the discretionary manner that *Bruen* held unconstitutional. 142 S. Ct. at 2156.

Finally, several courts around the country—including the Eleventh Circuit—have similarly rejected challenges to prosecutions under Section 5861(d) for possessing unregistered dangerous weapons. *See, e.g., United States v. Miller*, 11 F.4th 944, 955 (8th Cir. 2021) (rejecting challenge to NFA's prohibition of short-barreled shotguns); *United States v. Wilson*, 979 F.3d 889, 903 (11th Cir. 2020) (rejecting challenge to 26 U.S.C. §§ 5861(d) and 5871, prohibiting possession of unregistered sawed-off shotgun, as barred by *Miller*); *United States v. McCartney*, 357 F. App'x 73, 76 (9th Cir. 2009) (holding that silencers are not protected by the Second Amendment); *United States v. Grey*, No. 18-CR-00412-CAS-1, 2018 WL 4403979, at *13 (C.D. Cal. Sept. 13 2018) (holding that the registration requirement does not violate the Second Amendment).

Robinson's conduct falls outside the Second Amendment's protections. The plain text does not guarantee him the right to possess a short-barreled rifle and such a prohibition, as set forth in Section 5861(d), is well within the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons." *Heller*, 554 U.S. 627. *Bruen* does not change that result.

## II. Robinson's argument that the NFA exceeds Congress's taxing authority violates the Tenth Amendment is foreclosed by Eleventh Circuit Precedent.

The NFA is constitutional both facially and as applied as an exercise of the Taxing Power. The Eleventh Circuit has determined that "[t]he National Firearms Act is facially constitutional," pursuant to Congress' taxing power. *Spoerke*, 568 F.3d

at 1245 ("Congress under the taxing power may reasonably impose a penalty on possession of unregistered weapons.") (quoting *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972)); *see also Bolatete*, 977 F.3d 1022, 1030 (11th Cir. 2020). This Court is "bound by prior panel decisions unless and until [the Eleventh Circuit] overrule them while sitting en banc, or they are overruled by the Supreme Court." *United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011). The Court may "depart from a prior panel decision based upon an intervening Supreme Court decision only if that decision actually overruled or conflicted with it." *United States v. Marte*, 356 F.3d 1336, 1344 (11th Cir. 2004) (internal quotation marks omitted).

### III. Robinson's alternative taxation argument fails because the firearm in this case is outside the protection of the Second Amendment.

Robinson also argues that the NFA is an unconstitutional fee or tax that infringes on his Second Amendment right to possess a firearm. The firearm at issue in this case is a rifle having a barrel less than 16 inches in length which was not registered to the defendant in the National Firearms Registration and Transfer Record. *See* Doc. 1. Robinson raises the First Amendment fee jurisprudence, arguing that it should also apply in the Second Amendment context. The fee jurisprudence rests on two Supreme Court cases; *Cox v. New Hampshire*, 312 U.S. 569, 61 S. Ct. 762, 85 L.Ed. 1049 (1941), in which the Court upheld fee requirements for parades and public rallies, and *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S. Ct. 870, 87 L.Ed. 1292 (1943), in which the Court struck down license and fee requirements for solicitors. In *Cox*, the Supreme Court opined that a fee imposed on the exercise of a constitutional

right must not be a general "revenue tax," but such a fee is lawful if it is instead designed "to meet the expense incident to the administration of the act and to the maintenance of public order in the matter licensed." 312 U.S. at 577, 61 S. Ct. 762. Robinson acknowledges that application of the First Amendment fee jurisprudence of *Cox* and *Murdock* as to the Second Amendment is undecided in the Eleventh Circuit.

However, Robinson refers to two cases to support the position that the Eleventh Circuit should apply the First Amendment fee jurisprudence in the Second Amendment context; *Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017) and *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2d Cir. 2013). Doc. 32 at 23-24. However, in *Bauer* the Ninth Circuit stated:

> "Bauer argues that traditional Second Amendment intermediate scrutiny should apply because this case involves a fee. He urges us to apply the line of 'fee jurisprudence' that was developed by the Supreme Court in the First Amendment context to assess the constitutionality of fees imposed on the exercise of constitutional rights. We have recognized that there are other elements of Second Amendment Jurisprudence that have First Amendment analogies. *See Jackson*, 746 F.3d at 960. However, *we need not – and do not- decide whether First Amendment fee jurisprudence applies here because the fee easily survives that inquiry.*"

*Bauer*, 858 F.3d at 1224 (9th Cir. 2017), *emphasis added*. While the Ninth Circuit did discuss the application of jurisprudence in the context of a firearm fee it made clear that it was not adopting that analysis as the standard in the Second Amendment context. While *Kwong* did discuss the First Amendment fee jurisprudence in the

10

Second Amendment context, the Second Circuit held that the $340 residential handgun license is a constitutionally permissible fee. *Id*. at 167. Regardless, it is notable that neither opinion discusses a Second Amendment right involving a short-barrel rifle. Both opinions are void of that discussion because there is no Second Amendment right to possess a short-barreled rifle.

As discussed previously, the Second Amendment recognizes "the right of the people to keep and bear Arms" and says that the right "shall not be infringed." U.S. Const. amend. II. However, that right "is not unlimited," *Heller*, 554 U.S. at 626 (2008). The Second Amendment right does not allow every person "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*.

One important limitation is that *Heller* did not disturb the result in *United States v. Miller*, 307 U.S. 174 (1939). As *Heller* explained, "[t]he judgment in [*Miller*] upheld against a Second Amendment challenge to two men's federal indictment for transporting an unregistered short-barreled shotgun in interstate commerce, in violation of the National Firearms Act." *Heller*, 544 U.S. at 621-22. *Heller* continued that "the Court's basis for saying that the Second Amendment did not apply was … that the type of weapon at issue was not eligible for Second Amendment protection." *Id.* at 622.

*Heller* concluded, "[w]e therefore read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the

historical understanding of the score of the right." *Id*. at 625.

In describing limits on the scope of the Second Amendment right at the conclusion of the *Heller* opinion, the Supreme Court returned to *Miller* and explained one "important limitation on the right to keep and carry arms. Miller said, as we have explained, that the sorts of weapons protected were those 'in common use at the time.' We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" 554 U.S. at 637 (quoting Miller, 307 U.S. at 179.). Robinson maintains that the NFA impermissibly imposes fees, or alternatively taxes, on his Second Amendment right to keep and bear arms. However, the only firearm at issue in this case is a type of firearm outside the protection of the Second Amendment. Nothing in *Bruen* altered that precedent. As such, this Court should hold that the First Amendment fee jurisprudence does not apply to a prosecution under 26 U.S.C. § 5861(d).

**IV. Robinson's argument that the charged offense is unconstitutionally vague and violates the Fifth Amendment's Due Process Clause is foreclosed by Eleventh Circuit Precedent.**

Despite Robinson's argument, Doc. 32 at 25, the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 501 (2015), does not overrule the Eleventh Circuit's precedent in *Marte*. As articulated in *Marte*, "[t]he void-for-vagueness doctrine requires that a penal statute 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Marte,* 356 F.3d at

1342 (quoting *United States v. Fisher*, 289 F.3d 1329, 1333 (11th Cir. 2002), *cert. deined*, 537 U.S. 1112, 123 S. Ct. 903, 911, 154 L.Ed.2d 786 (2003)).

Robinson recognizes, Doc. 32 at 25, the Eleventh Circuit requires vagueness challenges, unrelated to the First Amendment, to be evaluated in light of the facts of the particular case. *Marte*, 356 F.3d 1336, 1342 (11th Cir. 2004). However, Robinson contends it did not consider *Johnson*, but the *Marte* decision predates the *Johnson* decision. *Johnson* did not overrule *Marte*. In fact, *Marte* and *Johnson* share the same legal foundation. *Marte* relied on *Fisher*, which relied on *Kolender v. Lawson*, 461 U.S. 352, 103 S. Ct. 1855, (1983). While *Johnson* also relied on *Kolender* and *Connally v. General Constr. Co.*, 269 U.S. 385. With the overlapping legal foundations, *Johnson* did not overrule *Marte* and *Marte* remains binding precent in the Eleventh Circuit.

Even if binding precedent does not foreclose this issue, "[t]he first step in a vagueness inquiry is to examine the plain language of the statute." United States v. Wayerski, 624 F.3d 1342, 1347 (11th Cir. 2010) (quoting *United States v. Duran*, 596 F.3d 1283 (11th Cir. 2010)). "The touchstone of the inquiry is the meaning of the statute in light of common understanding and practice." *Id.* (quoting *United States v. Hunt*, 526 F.3d 739 (11th Cir. 2008)). Robinson provides an overview of the law involving constitutional challenges of vagueness but does not address any particular language of the statute at hand. Absent explanation regarding how the ordinary meaning of the language in the statute failed to put Robinson on notice that his conduct was prohibited, Robinson's vagueness argument fails. *See also United States v.*

13

*Campbell*, 427 F.2d 892 (5th Cir. 1970*)* (rejecting a Fifth Amendment vagueness challenge to the NFA).

THEREFORE, the United States requests that this Court deny defendant's motion to dismiss.

                                                Respectfully submitted,

                                                ROGER B. HANDBERG
                                                United States Attorney

By:   /s/ *Sarah Janette Swartzberg*
       Sarah Janette Swartzberg
       Assistant United States Attorney
       Florida Bar No.: 1024847
       35 SE 1st Avenue, Suite 300
       Ocala, Florida 34471
       Telephone:  (352) 547-3600
       Facsimile:   (352) 547-3623
       E-mail: sarah.swartzberg@usdoj.gov

U.S. v. DAVID ROBINSON, JR.                Case No. 5:22-cr-72-GAP-PRL

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Christine Bird, AFPD

I hereby certify that on Date, a true and correct copy of the foregoing document and the notice of electronic filing were sent by Hand Delivery to the following non-CM/ECF participant(s):

N/A

/s/ Sarah Janette Swartzberg
Sarah Janette Swartzberg
Assistant United States Attorney
Florida Bar No.: 1024847
35 SE 1st Avenue, Suite 300
Ocala, Florida 34471
Telephone:  (352) 547-3600
Facsimile:   (352) 547-3623
E-mail: sarah.swartzberg@usdoj.gov

15