UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**UNITED STATES OF AMERICA**

vs.                                           Case No: 5:22-cr-72-GAP-PRL

**DAVID ROBINSON, JR.**

___

**REPLY TO UNITED STATES' RESPONSE
TO MOTION TO DISMISS INDICTMENT**

The Defendant, **DAVID ROBINSON, JR.**, by and through the undersigned attorney, replies to the Government's Response in Opposition to his Motion to Dismiss Indictment and Memorandum of Law.

**I.  This Court can properly consider the issues in this case in a Motion to Dismiss.**

In its response to the Defendant's Motion to Dismiss, the government discusses the propriety of granting a motion to dismiss the indictment and urges that such a motion is limited to a determination of the sufficiency of the indictment. Mr. Robinson asserts that the Court can properly consider the constitutional challenges raised in his motion in a pre-trial motion to dismiss under Fed. R. Crim P. 12 (b)(1) which reads "[a] party may raise by pre-trial motion any defense, objection, or request that the court can determine without a general trial on the issues." *Id.*  In *United States v. Harvey*, -- F. Supp. 3d --, 2022 WL 2389306 (D. Neb. July 1, 2022), the district court recently addressed

1

the validity of a motion to dismiss under this rule. *Id.* The court noted that Rule 12(b)(1), Fed. R. Crim. P, permits the defendant to raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits. *Id.* The court reasoned that a motion is capable of pretrial determination if the trial of the facts surrounding commission of the alleged offense would be of no assistance in determining the validity of the motion. *Id.* at *2 (citing *United States v. Turner*, 842 F.3d 602, 604 (8th Cir. 2016)). Further, the court found it appropriate to consider the validity of a charge under 18 U.S.C. § 922(g)(4) within a motion to dismiss because it was a question of law. *Id.*; *see, e.g., United States v. Korn*, 557 F.2d 1089, 1090-91 (5th Cir. 1977) (explaining that courts may properly consider questions of law on a pretrial motion to dismiss).

Here, Mr. Robinson asks the Court to address the constitutionality of the statute, by its elements, and without regard to the underlying facts. Thus, it is appropriate for the Court to review this motion to dismiss and determine a question of law.

## II. The prohibition on the possession of a short-barreled rifle in 26 U.S.C. § 5861(d) is unconstitutional.

The Second Amendment's plain text covers possession of unregistered short-barreled rifles, and the government has not proven a robust history of distinctly similar regulations.

The government relies on *United States v. Miller*, 307 U.S. 174 (1939), and argues that the decision in *Miller*, which held that the Second Amendment did not guarantee the right to possess a short-barreled shotgun, forecloses such an argument in the instant case. *Id.* at 178. Notably, the issue in *Miller*, is not identical to the issue in the instant case. The cases are distinguishable to the extent that *Miller* involves a short-barreled shot gun whereas the instant case involves a short-barreled rifle. And, further, in light of subsequent precedent and the recent ruling in *Bruen, Miller* is unpersuasive. *Miller* did not conduct *Bruen*'s textual-historical inquiry and is based on the militia theory of the Second Amendment. But *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and *New York State Rifle and Pistol Association, Inc. v. Bruen*, ___ U.S. __. 142 S.Ct. 2111 (2022), reject the argument that the Second Amendment was enacted to ensure the effectiveness of the militia. These subsequent cases make clear that the Second Amendment right to bear arms is a personal right of the people. The possession of a firearm, for home defense or self-defense, was key to the Supreme Court's holdings in *Heller*, *McDonald*, and *Bruen*. Because the Court in *Miller* read the Second Amendment right as a right guaranteed to preserve the militia, it failed to analyze whether such a weapon could be used by an individual for self-defense. *United States v. Miller*, 307 U.S. at 178.

Significantly, Justice Scalia, in *Heller*, stated "it is particularly wrongheaded to read *Miller* for more than what it said, because the case did not even purport to be a thorough examination of the Second Amendment." *Heller*, 554 U.S. at 623. Further undermining *Miller* is its unique procedural posture. It was decided by the Supreme Court on direct appeal from the trial court's dismissal of an indictment. The defendants neither filed a brief nor appeared at oral argument. The Court heard only from the government. The unique posture is reason enough, as stated by Justice Scalia, "not to make. . . (*Miller*) the beginning and end of this Court's consideration of the Second Amendment." *Id*.

The government also advances an argument that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes. In his Motion to Dismiss, Mr. Robinson cited the historical existence of short-barreled rifles and their current use in sporting and self-defense. The Government did not try to deny Mr. Robinson's assertion that a short-barreled rifle could be used for sporting purposes and for self-defense and did not contest that there are over 160,000 lawfully owned short-barreled shotguns currently held in the United States. (Doc. 32, pg. 7-8). In fact, despite the burdensome registration requirements, the actual number of short-barreled <u>rifles</u>, as opposed to just shotguns, is just over half a million. *See*,

Bureau of Alcohol, Tobacco, Firearms and Explosives, Firearms Commerce in the United States. Annual Statistical Update 2021 at 16.[1]

Regulating short-barreled firearms is a recent development since the NFA was enacted in 1934. Although there may be an important limitation on the right to keep and carry arms which is "fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons," *Heller*, 554 U.S. at 627, the government has failed to show the needed historical tradition of the prohibition on keeping a short-barreled firearm. *Bruen* overturned the New York state licensing scheme that largely tracked law enacted in the early 1900's, *Bruen*, 142 S.Ct. at 2122, so it would be difficult for the government to argue that a law enacted less than 90 years ago is entitled to greater weight as part of the tradition of historical gun regulation.

Finally, Justice Thomas has pointed out that unlawfully possessing a short-barreled rifle does not describe inherently dangerous conduct. *Johnson v. United States*, 576 U.S. 591, 610 (2015) (Thomas, J., concurring).[2]

### III.  The NFA exceeds Congress's taxing authority.

---

[1] https://www.atf.gov/firearms/docs/report/2021-firearms/commerce-report/download

[2] Also, reliance on that quote from *Heller* is shaky since the "long-standing" language was dicta on an issue not before the Court. To be sure, the Eleventh Circuit stated that a different part of *Heller*—limiting the Court's opinion to possession of firearms by law-abiding and qualified individuals—was not dicta. *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010). But that statement did not address whether *Heller*'s specific statement regarding "dangerous and unusual weapons" was dicta.

The government stated that Mr. Robinson recognized that the NFA is constitutional both facially and as applied as an exercise of the Taxing Power. (Doc 36, page 10). Mr. Robinson recognized that the current Eleventh Circuit precedent holds against his argument. To be sure, the Eleventh Circuit held in *Bolatete* that the defendant's taxing power challenge was contrary to circuit precedent[3] and unsupported by the facts of his case. *United States v. Bolatete*, 977 F.3d 1022, 1034 (11th Cir. 2020). However, to the extent Mr. Robinson's argument is foreclosed by *Bolatete*, *Ross*, and *Spoerke*, Mr. Robinson respectfully preserves the issue for further review.

## IV. Alternatively, the NFA is an unconstitutional fee or tax on the Second Amendment right to keep and bear arms.

As Mr. Robinson explained in his Motion to Dismiss, this argument is not foreclosed by *Bolatete*. (Doc. 32 pg. 23 fn.10) Given that *Bolatete* was decided before *Bruen*'s explanation of the proper historical tradition standard, which was wholly unaddressed by the Eleventh Circuit, and because many of the arguments presented, in *Bolatete*, were reviewed under a plain error standard, Mr. Robinson asserts that it is proper to consider his argument, and he maintains all of the arguments in the Motion to Dismiss.

---

[3] *United States v. Ross*, 458 F.2d 1144 (5th Cir. 1972) and *United States v. Spoerke*, 568 F.3d 1236 (11th Cir. 2009).

## V. The NFA "infringes" on the right to possess short-barreled rifles, and the government has not met its burden of showing its constitutionality.

The NFA has complex applications, lengthy wait times, and fees. The average wait time for a correct and complete paper application is 12 months.[4] The transferor must pay a $200 tax. *See* 26 U.S.C. §§ 5811(b), 5841(b). Failure to pay the tax or register the firearm exposes the transferee to the "harsh" 10-year penalty. *See* 26 U.S.C. § 5871; *Staples v. United States*, 511 U.S. 600, 616 (1994).

According to the government, gun controls that only regulate rather than completely prohibit the possession of firearms do not "infringe" on the Second Amendment right. Thus, the argument goes, because Mr. Robinson could have "theoretically" complied with the NFA's requirements, the law does not "infringe" on his Second Amendment rights.

This argument is undermined by *Bruen*. There, at issue was New York's scheme for licensing the public carry of firearms. *Bruen*, 142 S. Ct. at 2122. Under this scheme, a New Yorker could obtain a license to publicly carry a firearm by showing a special need for self-defense. *Id.* at 2122-23. The law was

---

[4] Current Processing Times | Bureau of Alcohol, Tobacco, Firearms and Explosives (atf.gov) (last updated Oct. 1, 2022) (Form 4, Application for Tax Paid Transfer and Registration of Firearm), https://www.atf.gov/resource-center/current-processing-times (last accessed Dec. 12, 2022).

7

not a complete prohibition on the public carry of firearms. But the Supreme Court struck it down as a violation of the Second Amendment. *Id.* Regulations that do not amount to a complete ban, like the NFA, thus may "infringe" on the right to keep and bear arms.

The government's reliance on dicta in *Bruen* and Justice Kavanaugh's concurrence is no more persuasive on this point. In dicta, *Bruen* explained that so-called "shall-issue" licensing regimes do not "necessarily" violate the Second Amendment. 142 S. Ct. at 2138 n.9. At the same time, "because any permitting scheme can be put toward abusive ends," *Bruen* did "not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Id.* Justice Kavanaugh reiterated the gist of this dicta with the same limiting caveat. *See id.* at 2162 (Kavanaugh, J., concurring).

The NFA is not like the shall-issue regimes mentioned by the Court, in practice or design. While under shall-issue regimes the licensee may carry any lawful firearm he wishes, under the NFA the burden of registering the firearm, the cost of the tax, the harsh penalties associated with non-compliance and the delay all serve to "infringe" on the right to possess a short-barreled firearm.

**V.    The NFA is void for vagueness.**

Mr. Robinson maintains his arguments in his Motion to Dismiss. He maintains that he may bring a facial vagueness challenge without first showing that the statute is unconstitutionally vague as applied to him. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1214 n.3 (2018); *Johnson v. United States*, 576 U.S. 591, 602-03 (2015). However, he acknowledges Eleventh Circuit cases prior to *Johnson* and *Dimaya* stating that vagueness challenges must be evaluated in light of the facts of the case at hand. *See United States v. Marte*, 356 F.3d 1336, 1342 (11th Cir. 2004) (citation omitted). He respectfully submits that *Johnson* and *Dimaya* undermine *Marte* to the point of abrogation. In any event, to the extent the Court needs additional factual development to decide Mr. Robinson's as-applied and/or facial challenges based on vagueness, Mr. Robinson requests an opportunity to preserve and renew this part of his Motion after evidence is presented at trial.

DATED: January 17, 2023.

        A. Fitzgerald Hall, Esq.
        Federal Defender, MDFL

        */s Christine Bird*
        Christine Bird, Esquire
        Fla. Bar Number 0971642
        203 E. Silver Springs Blvd.
        Suite 202
        Ocala, Florida 34471
        Telephone: 352-351-9157
        Facsimile: 352-351-9162
        Christine_bird@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been filed with the district court and delivered by electronic means using the clerk's CM/ECF system to AUSA, Sarah Swartzberg this 17th day of January of 2023.

*/s Christine N. Bird*
Assistant Federal Defender